Forrest A. Hainline III (SBN 64166)
*fhainline@goodwinprocter.com*
Patrick S. Thompson (SBN 160804)
*pthompson@goodwinprocter.com*
Robert B. Bader (SBN 233165)
*rbader@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

Attorneys for Defendant
BUMBLE BEE FOODS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PATRICK GARRETT, JEFF MAINS and LINDA EUSTICE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE BEE FOODS, LLC,<br><br>Defendant. | Case No. 5:14-cv-02546-EJD<br><br>**BUMBLE BEE FOODS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS, OR, ALTERNATIVELY, MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:      August 15, 2014<br>Time:      9:00 a.m.<br>Courtroom:  4, 5th Floor<br>Judge:      Hon. Edward J. Davila |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................ii

NOTICE OF MOTION AND MOTION....................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED ................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................3

I.      INTRODUCTION ...................................................................................3

II.     BACKGROUND.......................................................................................4

        A.      Federal Regulation of Food Labeling...............................................4

        B.      Nutrient Content Claims for Omega-3 Fatty Acids .................................5

III.    ARGUMENT ...........................................................................................8

        A.      Plaintiffs' Claims Are Preempted by FDA Regulation of "Excellent Source
                of Omega 3" Claims ...............................................................................8

        B.      The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim (Count 10).......10

        C.      If the Court Does Not Dismiss Plaintiffs' Omega-3 Claims, the Action
                Should Be Stayed Until FDA's Omega-3 Rule Takes Effect .............................11

IV.     CONCLUSION.......................................................................................14

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**CASES**

4

*Avoy v. Turtle Mountain*, LLC,
   13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014) ........................................... 11

5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 8

6

7

*Brazil v. Dole Food Co., Inc.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ............................................................................... 11

8

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..................................................................... 3, 5, 8, 9

9

10

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ..................................................................................... 10

11

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ................................................................................ 4, 11, 12, 14

12

13

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ..................................................................... 5, 8, 9

14

15

*In Re Pepsico, Inc., Bottled Water Mktg. and Sales Practices Litigation*,
   588 F. Supp. 2d 527 532 (S.D.N.Y. 2008) ....................................................................... 8, 10

16

17

*Johns v. Bayer Corp.*,
   09-CV-1935-DMS, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ........................ 11

18

*Lasley v. New England Variable Life Ins. Co.*,
   126 F. Supp. 2d 1236 (N.D. Cal. 1999) ............................................................................. 8

19

20

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ....................................................................................... 12, 14

21

22

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................. 11

23

*Minims Apothecary, LLC v. InformedRx, Inc.*,
   11-CV-6612-PJH, 2012 U.S. Dist. LEXIS 41162 (N.D. Cal. Mar. 26, 2012) ........................ 11

24

25

*N. River Ins. Co. v. Leffingwell Ag Sales Co., Inc.*,
   10-CV-02007-LJO, 2011 WL 304579 (E.D. Cal. Jan. 27, 2011) ..................................... 12, 13

26

27

*Nielsen v. Merck & Co., Inc.*,
   07-CV-00077-WHA, 2007 WL 755298 (N.D. Cal. Mar. 8, 2007) ........................................ 11

28

*Ogden v. Bumble Bee Foods, LLC*,
    5:12-CV-01828-LHK, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ................................... 11, 12

*Smith v Ebay Corp.*,
    10-CV-03825, 2012 U.S. Dist. LEXIS 1211 (N.D. Cal. Jan. 5, 2012) ................................... 11

**STATUTES**

21 U.S.C. § 343 ........................................................................................................................passim

21 U.S.C. § 343-1 ................................................................................................................... 3, 5, 8

Cal. Health & Safety Code § 110100 ........................................................................................... 5

**OTHER AUTHORITIES**

21 C.F.R. § 101.9 ......................................................................................................................... 4

21 C.F.R. § 101.54 ....................................................................................................................... 4

Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic Acid,
    and Docosahexaenoic Acid Omega-3 Fatty Acids, 72 Fed. Reg. 66,103
    (Nov. 27, 2007) ................................................................................................................ 5, 6, 7

Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic Acid,
    and Docosahexaenoic Acid Omega-3 Fatty Acids, 79 Fed. Reg. 23,262
    (Apr. 28, 2014) ................................................................................................................ 7, 8, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 8

NOTICE OF MOTION AND MOTION TO DISMISS, OR STAY    Case No. 5:14-cv-02546-EJD

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 15, 2014, at 9:00 a.m., or as soon thereafter as counsel may be heard, defendant Bumble Bee Foods, LLC ("Bumble Bee") will bring on for hearing before the Honorable Edward J. Davila, United States District Judge, in Courtroom 4, 5th Floor, at the United States Courthouse, 280 South First Street, San Jose, California, its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Bumble Bee brings this Motion on the grounds that Plaintiffs' claims under California law regarding food labeling for omega-3 fatty acids are preempted by the federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq.*  In the alternative, good cause exists for the Court to stay this proceeding until January 1, 2016, the deadline set by the United States Food and Drug Administration for implementation of new label requirements related to qualitative nutrient content statements about omega-3 fatty acids.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the files and documents on record in this action, and on such other written and oral argument as may be presented to the Court.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Pursuant to Civil Local Rule 7-4(a)(3), Bumble Bee sets forth the following statement of issues to be decided:

1.     Should Plaintiffs' claims brought under California law regarding food labeling for omega-3 fatty acids be dismissed because they are preempted by the federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq.*?

2.     Should Plaintiffs' unjust enrichment claim (Count 10) be dismissed because California does not recognize such a claim?

3.     If the Court finds that Plaintiffs' claims are not preempted, should the Court stay the action until January 1, 2016, the deadline set by the United States Food and Drug Administration for implementation of new label requirements related to qualitative nutrient content statements about omega-3 fatty acids?

## MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum supports Bumble Bee Foods, LLC's ("Bumble Bee") motion to dismiss the complaint filed by Patrick Garrett, Jeff Mains and Linda Eustice ("Plaintiffs"), or, alternatively, Bumble Bee's motion to stay this proceeding.

## I.    INTRODUCTION

Plaintiffs allege that Bumble Bee violated California labeling laws by stating on certain seafood product labels that the product is an "Excellent Source of Omega 3."  Complaint ¶ 22. Specifically, Plaintiffs contend that products are "misbranded" under the Food, Drug, and Cosmetic Act ("FDCA"), and derivatively under California's Sherman Act, because Bumble Bee's statements on these labels allegedly do not specify the type of omega-3 fatty acids in the products, and do not replicate the exact statement the United States Food and Drug Administration ("FDA") had tacitly approved:  "Excellent Source of Omega 3 EPA and DHA."  *Id.*

FDA recently adopted comprehensive standards for qualitative statements like "Excellent Source" that characterize the level of fish-based omega-3s in a product.  FDA's final rule prohibits these statements for technical reasons, finding that there is no authoritative threshold for qualitative statements about fish-based omega-3s, whether the statement is generic or specifies the fish-based fatty acids.  FDA did not make any findings of consumer confusion, deception or injury.  Though it found statements like "Excellent Source of Omega 3 EPA and DHA" to be misleading due to the lack of an authoritative threshold, FDA deferred implementation of the new rule until January 1, 2016.  FDA specifically weighed the interests of manufacturers and public welfare in ordering a nearly two-year transition period.

Plaintiffs contend that they are entitled to immediate relief and damages under California law, ignoring that the FDCA expressly preempts any state law that imposes obligations that differ from federal laws and regulations.  21 U.S.C. § 343-1(a)(5).   Granting the relief sought in the complaint would undermine FDA's regulatory authority by overruling the balancing of interests FDA conducted in deferring implementation of its final rule.  Plaintiffs cannot impose requirements under California law that are not "identical to those imposed by the FDCA." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010).  By their

1  complaint, they are seeking that result.  Accordingly, Plaintiffs' state law claims about Bumble

2  Bee's omega-3 statements are preempted and should be dismissed.[1]

3      If the Court concludes that Plaintiffs' claims are not preempted, the Court should stay this

4  proceeding until January 1, 2016.  In addition to damages, Plaintiffs seek injunctive relief.

5  Bumble Bee, like other food manufacturers, must change its labels to conform to FDA's final rule.

6  Ordering injunctive relief before January 1, 2016 would only complicate the ongoing transition

7  period.  To further "the orderly course of justice" and "simplify[] . . . issues, proof, and questions

8  of law," this Court should stay the case until the transition period FDA ordered is complete.

9  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

10  **II.      BACKGROUND**

11      **A.      Federal Regulation of Food Labeling**

12      The FDCA[2] regulates food labels, including circumstances in which food "shall be deemed

13  to be misbranded."  21 U.S.C. § 343.  A food item may be misbranded if the label is "false or

14  misleading" (*id.* § 343(a)) or where it fails to satisfy certain technical FDA requirements (*e.g.*, *id.*

15  § 343(r)).  FDA technical requirements standardize statements across food labels to ensure that

16  consumers obtain consistent and accurate information throughout the United States.

17      FDA establishes comprehensive standards for qualitative statements about nutrient content,

18  such as "Excellent Source of Omega 3."  *Id.* § 343(r)(1), (2) (regulating the characterization of

19  nutrient levels).  The agency has defined words characterizing nutrient levels—for example, "high

20  in" or "contains"—based on the Reference Daily Intake ("RDI") or Daily Reference Value

21  ("DRV") FDA has established for those nutrients.  *See* 21 C.F.R. §§ 101.9(c)(8)(iv), (c)(9).  For

22  example, the terms "high," "rich in," or "excellent source of" a certain nutrient can only be used if

23  "the food contains 20 percent or more of the RDI or the DRV per reference amount [of the food]

24  customarily consumed."  *Id.* § 101.54(b).

25      If FDA has not established an RDI or DRV, a food manufacturer can make a nutrient

26  ────────────────

[1] The Court also should dismiss Plaintiffs' claims for unjust enrichment.  *See infra* Section III.B.

27  [2] The references to the FDCA are as amended by the Nutrition Labeling and Education Act of
   1990 and the Food and Drug Administration Modernization Act of 1997.

28

content claim only if the National Academy of Sciences or a governmental public health body publishes an "authoritative statement" that "identifies the nutrient level" to which the nutrient content claim refers. 21 U.S.C. § 343(r)(2)(G)(i). Manufacturers who choose this path must submit a notification to FDA identifying the authoritative statement, providing the words it will use in its qualitative nutrient content claim, and describing the scientific literature concerning the relevant nutrient. *Id.* § 343(r)(2)(G)(ii). If FDA takes no action within 120 days, the manufacturer can make that nutrient content claim on its label. *Id.* § 343(r)(2)(G), (H). At any time, FDA can disallow the nutrient content claim.

The FDCA preempts state laws that impose food labeling requirements that are not identical to the requirements of federal law.[3] *See Chacanaca*, 752 F. Supp. 2d at 1118. Specifically, the FDCA provides that "no state or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce any requirement respecting any claim . . . made in the label or labeling of food that is not identical to the requirement of [§ 343(r)]." 21 U.S.C. § 343-1(a)(5). Through the Sherman Food Drug and Cosmetic Law, California adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100; *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1116 (N.D. Cal. 2013).

**B.    Nutrient Content Claims for Omega-3 Fatty Acids**

Plaintiffs allege that Bumble Bee violated the FDCA "by representing that its products are an 'excellent source' of Omega 3 and by failing to specify whether its Omega 3 nutrient content claims are referring to ALA, DHA or EPA Omega 3 fatty acids." Complaint ¶ 27. Of the three different types of omega-3 fatty acids, EPA and DHA are found in fish, while ALA is found in plants. *See* Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic Acid, and Docosahexaenoic Acid Omega-3 Fatty Acids, 72 Fed. Reg. 66,103, 66,110 (Nov. 27,

---

[3] The FDCA does not create a private cause of action to enforce FDA's food labeling regulations. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1116 (N.D. Cal. 2013).

1    2007) ("EPA and DHA occur naturally in some fish, with higher levels in fattier fish [while] ALA

2    is present in some nuts and nut oils, flaxseeds and flaxseed oil, vegetable oils, and in many

3    prepared foods that include flaxseeds, nuts, or oils as an ingredient.") (attached as Exhibit 1 to

4    Request for Judicial Notice ("RJN")).  FDA has not established an RDI or DRV for omega-3 fatty

5    acids.  And the FDA recently provided comprehensive standards governing any qualitative

6    nutrient content statements about EPA and DHA omega-3 fatty acids in fish.

7         FDA developed its standard for qualitative nutrient content statements for omega-3s over

8    the course of a decade.  In 2005, the Food and Nutrition Board of the Institute of Medicine (IOM)

9    of the National Academy of Sciences published a report called "Dietary Reference Intakes for

10   Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids" (the "IOM

11   Report").  *See* 72 Fed. Reg. 66,105 (RJN Ex. 1).  The IOM Report establishes Dietary Reference

12   Intakes ("DRI") and Recommended Daily Allowances ("RDA") for various nutrients.  *Id.*

13   Although the Report discussed the benefits of fish-based EPA and DHA omega-3s and made

14   findings as to plant-based ALA omega 3s, it did not establish any standard for EPA or DHA fish-

15   based omega-3s.[4]  *Id.* at 66,105.

16        After the release of the IOM Report, three groups submitted nutrient content claim

17   notifications under Section 343(r)(2)(G) stating that the IOM Report established authoritative

18   statements identifying a basis for nutrient content claims concerning omega-3 fatty acids.  *See id.*

19   at 66,105-66,107.  Ocean Nutrition submitted a notification that proposed nutrient content claims

20   for a combination of the fish-based EPA and DHA omega-3 fatty acids.  *Id.* at 66,107.  Because

21   FDA's regulations define a "high" or "excellent" source to have at least 20 percent of the

22   recommended daily intake of a nutrient per serving, Ocean Nutrition urged that a product was

23   "high in" or an "excellent" source of fish-based EPA and DHA fatty acids if one serving contained

24   at least 32 mg of a combination of the two fish-based omega-3 fatty acids, and proposed the

25

26

27   ───────────────
     [4] FDA determined that sufficient scientific evidence existed to set an Adequate Intake value ("AI")
     of 1.6 grams per day for plant-based ALA omega-3s.  72 Fed. Reg. 66,105 (RJN Ex. 1).

28

---

6

1  following label statement: "Excellent source of Omega-3 EPA and DHA."[5]  *Id.* at 66,107.  FDA

2  did not take action within 120 days on the Ocean Nutrition notification or the other two

3  notifications regarding omega-3 fatty acids.  Thus, under 21 U.S.C. § 343(r)(2)(G), these nutrient

4  content claims became permissible for all manufacturers as of April 9, 2006.  *See id.* at 66,107.

5      On November 27, 2007, FDA published proposed rules in response to the three omega-3

6  notifications.  Although FDA "recognize[d] that consumption of EPA and/or DHA may provide

7  health benefits and that industry may wish to alert consumers to those benefits," the proposed

8  rules nevertheless rejected any qualitative nutrient content claim for fish-based EPA or DHA

9  omega-3s because there was no "authoritative statement" for recommended intake.[6]  *Id.* at 66,109.

10  Nowhere did the proposed rules suggest that consumers had been deceived or injured by

11  qualitative nutrient content claims about omega-3s.

12      FDA only recently finalized its position on qualitative nutrient claims for fish-based

13  omega-3s.  On April 28, 2014, FDA adopted its proposed rule as a final rule (the "Omega-3

14  Rule").  *See* Food Labeling: Nutrient Content Claims; Alpha-Linolenic Acid, Eicosapentaenoic

15  Acid, and Docosahexaenoic Acid Omega-3 Fatty Acids, 79 Fed. Reg. 23,262 (Apr. 28, 2014)

16  (attached as Exhibit 2 to RJN).  FDA reiterated that the statements regarding fish-based EPA and

17  DHA in the IOM Report were not "authoritative statements" because the report did not identify a

18  specific recommended intake for those fatty acids.  *Id.* at 23,265.  FDA recognized that its rule

19  might limit consumption of these beneficial nutrients, but concluded that because FDA had "yet to

20  conduct a review of the scientific evidence concerning the health effects of consuming EPA and

21  DHA at different levels, we cannot determine whether the loss of these claims would have any

22  impact on consumer health, either beneficial or detrimental."  *Id.* at 23,270.  FDA did not suggest,

23  or find, that consumers had been confused, misled, deceived or injured by labels making claims

24

25  [5] Ocean Nutrition combined the IOM Report's 1.6 grams per day AI for ALA with the Report's
    conclusion that up to ten percent of that AI could come from EPA and DHA to conclude that the
26  daily intake of fish-based EPA and DHA omega-3 fatty acids should be 160 mg per day.  72 Fed.
    Reg. 66,107 (RJN Ex. 1).

27  [6] The proposed rules allowed nutrient content claims for plant-based ALA omega 3 fatty acids
    based on the IOM Report's AI for ALA fatty acids.  72 Fed. Reg. 66,107 (RJN Ex. 1).

28

---

7

1  such as "Excellent Source" or "Rich In" omega-3 in seafood.

2          Far from finding any consumer injury, FDA delayed implementation of the Omega-3 Rule

3  until January 1, 2016.  *Id.* at 23,269.  Though within its authority, FDA did not order the

4  immediate cessation of sales, nor did it require manufacturers to recall products on the shelves.  If

5  FDA had found that consumers were being harmed, FDA presumably would have taken

6  immediate action.  To the contrary, balancing the interests of consumers and food manufacturers,

7  FDA allowed a "transition period" for the implementation of its prohibition on qualitative nutrient

8  claims about fish-based omega-3s.  *Id.*

9  **III.    ARGUMENT**

10         **A.    Plaintiffs' Claims Are Preempted by FDA Regulation of "Excellent Source of
                   Omega 3" Claims**

11         A complaint should be dismissed for failure to allege "enough facts to state a claim to

12 relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R.

13 Civ. P. 12(b)(6).  Where allegations involve state law claims preempted by federal law, those

14 allegations must be dismissed.  *See, e.g.*, *Lasley v. New England Variable Life Ins. Co.*, 126 F.

15 Supp. 2d 1236 (N.D. Cal. 1999).  FDA's order adopting the Omega-3 Rule preempts Plaintiffs'

16 state law claims.

17         The FDCA expressly preempts any state law regulating food labels that imposes "any

18 requirement respecting any claim . . . made in the label or labeling of food that is not identical to

19 the requirement of [§ 343(r)]."  21 U.S.C. § 343-1(a)(5).[7]  "[S]tate law cannot impose obligations

20 beyond, or different from, what federal law requires."  *In Re Pepsico, Inc., Bottled Water Mktg.*

21 *and Sales Practices Litigation*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); *see also Chacanaca*,

22 752 F. Supp. 2d at 1114 (claim preempted when it "seek[s] to impose a requirement in *addition* to

23 what is mandated by federal statutes and regulations" (emphasis in original)); *Gustavson*, 961 F.

24 Supp. 2d at 1120.

25

26 ――――――――――――――――
   [7] This includes both state statutes as well as state common law claims.  *Chacanaca*, 752 F. Supp.
27 2d at 1118 (noting that "the term 'requirements' reaches beyond positive enactments like statutes
   and regulations, to embrace common-law duties and judge-made rules") (citing *Bates v. Dow*
28 *Agrosciences, LLC*, 554 U.S. 431, 443 (2005)).

―――――――――――――――――――――――――――――――――――――――――――――――――――――――

1    Plaintiffs seek to impose requirements that exceed FDA's requirements.  As this court has

2    held, claims seeking that outcome are preempted.  In *Chacanaca*, for example, the plaintiffs

3    alleged that Quaker Oats's Chewy Bars were misbranded because they stated "0 grams trans fats"

4    on the side of the box, despite containing a small amount of trans fats.  752 F. Supp. 2d at 1115.

5    FDA regulations require that when a product contains less than 0.5 grams of trans fat per serving,

6    the manufacturer should round down to zero grams of trans fats in the nutrition box, but FDA

7    regulations do not address whether Quaker Oats could or must round down to zero in a statement

8    made outside of the nutrition box.  *Id.* at 1120-21.  This Court concluded that FDA had expressed

9    a general "preference for internal consistency between the nutrition box and the rest of the label,"

10   and thus the plaintiffs' claim that Quaker Oats should have rounded differently at different places

11   on its box sought to impose a labeling requirement that went beyond federal law, and was

12   therefore preempted.  *Id.* at 1121.

13       Similarly, in *Gustavson*, the plaintiffs alleged that Mars's statement that its candy bars had

14   a "certain percentage of the Daily Value ('DV') of calories" was misbranded because "there is no

15   DV for calories and food manufacturers are precluded from making such claims unless a DV

16   actually exists."  961 F. Supp. 2d at 1109.  This Court held that Mars's statement "could not

17   possibly be false or misleading within the meaning of the FDA's regulations, because the FDA

18   *itself* uses a 2,000 calorie day baseline to calculate nutrient DVs."  *Id.* at 1122 (emphasis in

19   original).  Because the plaintiffs sought to impose labeling requirements that differed from those

20   used by FDA, this Court held that certain of the plaintiffs' claims were preempted.  *Id.* at 1123.

21       FDA's Omega-3 Rule comprehensively addresses food labeling with regard to qualitative

22   food label statements about omega-3 fatty acids.  In adopting the Omega-3 Rule, FDA made two

23   decisions.  First, it concluded that the IOM Report does not contain an "authoritative statement" as

24   a basis for nutrient claims regarding fish-based omega-3 fatty acids, so no food label can contain

25   any qualitative statement about those fatty acids.  Second, FDA concluded that, in balancing the

26   public interest, a "transition period" was necessary.  To give force to its findings, FDA ordered the

27   Omega-3 Rule not to take effect until January 1, 2016.

28       The application of preemption to the Plaintiffs' claims could hardly be more clear.  FDA

9

analyzed the federalism impact of the Omega-3 Rule, observing that the FDCA preempts state labeling requirements "that [are] not identical to the requirement of [21 U.S.C. § 343(r)]," and that its rule "prohibits certain nutrient content claims for certain omega-3 fatty acids in the label or labeling of food under [§ 343(r)]."  79 Fed. Reg. 23,273 (RJN Ex. 2).  To avoid being preempted, state law must therefore be identical to the Omega-3 Rule's prohibition on these nutrient content claims.

Once FDA adopted the Omega-3 Rule, states cannot "impose obligations [concerning omega-3 labeling] beyond, or different from, what" the Omega-3 Rule requires.  *In re Pepsico*, 588 F. Supp. 2d at 532.  Because the Omega-3 Rule does not take effect until 2016, states cannot impose requirements concerning omega-3 labeling until that date.  To allow one state to start enforcing the omega-3 prohibition now would undermine FDA's regulatory authority and the national uniformity that Congress intended to create with the FDCA.  *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010) ("Congress passed the Nutrition Labeling and Education Act of 1990 amending the FDCA to prescribe national uniform nutrition labeling for foods.").

In short, FDA adopted the Omega-3 Rule because it concluded that the IOM Report did not provide an "authoritative statement" concerning the recommended daily intake of fish-based EPA and DHA omega-3 fatty acids to which a nutrient content claim could refer.  Plaintiffs' claims are based on exactly the same theory: that Bumble Bee's statement that certain products are an "Excellent Source of Omega-3" is technically "misbranded" because there is no "authoritative statement" concerning the recommended daily intake of omega-3 fatty acids.  But FDA has concluded that the Omega-3 Rule will not take effect until 2016, whereas Plaintiffs claim damages based on that legal theory right now.  As such, Plaintiffs attempt to use state law to impose different and additional food labeling requirements than FDA.  Their claims regarding omega-3 nutrient content claims are therefore preempted.

**B.      The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim (Count 10)**

This Court has recently and repeatedly dismissed claims for restitution based on unjust enrichment in food misbranding cases because unjust enrichment is not a cause of action under

California law.  *E.g.*, *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 966-67 (N.D. Cal. 2013) (collecting cases); *Avoy v. Turtle Mountain*, LLC, 13-CV-0236-LHK, 2014 WL 587173, at *8 (N.D. Cal. Feb. 14, 2014); *Ogden v. Bumble Bee Foods, LLC*, 5:12-CV-01828-LHK, 2014 WL 27527, at *14 (N.D. Cal. Jan. 2, 2014); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012); *Minims Apothecary, LLC v. InformedRx, Inc.*, 11-CV-6612-PJH, 2012 U.S. Dist. LEXIS 41162, at *2 (N.D. Cal. Mar. 26, 2012); *Smith v Ebay Corp.*, 10-CV-03825-JSW, 2012 U.S. Dist. LEXIS 1211, at *27-29 (N.D. Cal. Jan. 5, 2012); *Johns v. Bayer Corp.*, 09-CV-1935-DMS, 2010 U.S. Dist. LEXIS 10926, at *14-15 (S.D. Cal. Feb. 9, 2010).  In *Ogden*, this Court granted summary judgment on this basis concerning the exact same unjust enrichment claim against Bumble Bee brought by the exact same attorneys.  *Ogden*, 2014 WL 27527, at *14.  The Court should reach the same conclusion here and dismiss Plaintiffs' claim for unjust enrichment.

### C.     If the Court Does Not Dismiss Plaintiffs' Omega-3 Claims, the Action Should Be Stayed Until FDA's Omega-3 Rule Takes Effect

Plaintiffs seek an order "enjoining Defendant from continuing to market, advertise, distribute, and sell [its Misbranded Food Products] in the unlawful manner described herein."  Complaint, Prayer For Relief, ¶ C.  However, Bumble Bee's labels regarding omega-3 fatty acids are currently in flux in response to both FDA's new Omega-3 Rule as well as a prior suit brought and dismissed by Plaintiffs' counsel that includes the same allegations they make here.  Before FDA adopted the Omega-3 Rule, and while another suit by Plaintiffs' counsel was pending, Bumble Bee began changing its labels to conform to the exact wording used in the Ocean Nutrition label statements, which were addressed directly by the Omega-3 Rule.  In fashioning any injunctive relief, should it prove necessary, the Court should not try to shoot at a moving target.  Rather, in order to further "the orderly course of justice" by "simplifying . . . issues, proof, and questions of law," *CMAX*, 300 F.2d at 268, the Court should stay this action until January 1, 2016, when FDA's Omega-3 Rule takes effect and all labeling changes will be complete.

"The power to grant a temporary stay 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Nielsen v. Merck & Co., Inc.*, 07-CV-00077-WHA, 2007 WL 755298,

at *2 (N.D. Cal. Mar. 8, 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Courts deciding whether to grant a stay should weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX*, 300 F.2d at 268; *see also N. River Ins. Co. v. Leffingwell Ag Sales Co., Inc.*, 10-CV-02007-LJO, 2011 WL 304579, at *7 (E.D. Cal. Jan. 27, 2011) (granting a stay because it would result in "the prospect of narrowing the factual and legal issues" and "will contribute to and simplify the decision of this Court as to the ultimate issues in this case").  Where the delay of a suit "would result, at worst, in a delay in . . . monetary recovery," little harm results to plaintiff from the delay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Here both the orderly course of justice and the balance of hardships to the parties weigh in favor of staying this case until January 1, 2016, when FDA's Omega-3 Rule takes effect.  Most importantly, it is contrary to the orderly course of justice for this Court to attempt to fashion any equitable relief at a time when Bumble Bee's food labels—and all omega-3-related food labels— are in a state of flux.  Bumble Bee has been in the process of changing its labels for several years, partly in response to a prior putative class action brought by Plaintiffs' attorneys against Bumble Bee making allegations that are nearly identical to those made in this case.  *See* Complaint, *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK; RJN Exhibit 3.  Plaintiffs' attorneys eventually dismissed that suit with prejudice after Judge Koh ruled that the plaintiff in that case was not entitled to damages.  *Ogden*, 2014 WL 27527, at *13.  In an attempt to forestall future suits (among other reasons), however, Bumble Bee began the process of changing its labels to state "Excellent Source of Omega-3 DHA and EPA" instead of simply "Excellent Source of Omega-3."  *See* RJN Ex. 3.  That process was ongoing when FDA issued its final Omega-3 Rule banning all omega-3 nutrient content claims starting on January 1, 2016.  Bumble Bee will complete the further process of conforming its labels to the Omega-3 Rule by removing all nutrient content claims concerning omega-3 fatty acids by January 1, 2016.

1    Because Bumble Bee's labels are in a state of flux, it would be nearly impossible for this

2    Court to determine what, if any, injunctive relief is warranted.  For instance, the Court cannot

3    order Bumble Bee to remove all nutrient content claims concerning omega-3 before January 1,

4    2016 because that would be directly counter to the FDA's Omega-3 Rule.  And the Court cannot

5    order Bumble Bee to add the "DHA and EPA" language to its labels because that language is

6    impermissible starting on January 1, 2016.  Staying this case until January 1, 2016, when FDA's

7    Omega-3 Rule will take effect, would allow the Court to wait to consider whether injunctive relief

8    is necessary until the landscape concerning omega-3 labeling has settled.  The Court could then

9    determine whether Bumble Bee has complied with the Omega-3 Rule and, if not, order appropriate

10   relief.  This will greatly "narrow[] the factual and legal issues" and "simplify the decision of this

11   Court as to the ultimate issues in this case."  *N. River Ins. Co.*, 2011 WL 304579, at *7.

12       The balance of hardships between the parties also weighs in favor of a stay.  Bumble Bee

13   was already in the process of changing its labels to add the "DHA and EPA" language when FDA

14   issued its final rule.  Bumble Bee must now begin a new label change to remove all omega-3

15   nutrient content claims by January 1, 2016 to comply with the final Omega-3 Rule.  To add the

16   prospect of injunctive relief to that process will unnecessarily complicate Bumble Bee's efforts to

17   fully comply with the law.  Bumble Bee is fully committed to complying with the final Omega-3

18   Rule by January 1, 2016, and action by this Court before that date would only make compliance

19   more difficult.

20       The hardship to Plaintiffs from a stay is minimal.  As already discussed, Bumble Bee is

21   already in the process of changing its labels to comply with the Omega-3 Rule, so Plaintiffs will

22   achieve the results of the injunction they seek even if this case is stayed.  Further, Plaintiffs'

23   actions demonstrate that they have no urgent need for an injunction.  Plaintiffs have not sought a

24   preliminary injunction in this case, and Plaintiffs' attorneys dismissed with prejudice an earlier

25   putative class action—in which the current Plaintiffs were members of the putative class—in

26   which they could have sought injunctive relief.  Plaintiffs cannot plausibly contend that staying

27   this case until FDA's Omega-3 Rule takes effect will harm their desire for injunctive relief.  Nor

28   will a delay in Plaintiffs' damages claims cause them significant hardship.  The Ninth Circuit has

ruled that, where staying a case "would result, at worst, in a delay in . . . monetary recovery," plaintiffs do not suffer significant harm from a stay.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc.*, 300 F.2d at 268-69).

Staying the case until the Omega-3 Rule takes effect will streamline and simplify the issues before the Court, while causing no hardship to Plaintiffs.  If the Court rules that Plaintiffs' omega-3-related claims are not preempted, it should stay this case until January 1, 2016.

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss all allegations in Plaintiffs' Complaint that are based on Bumble Bee's statement that its products are an "Excellent Source of Omega 3," as well as Plaintiffs' claim for unjust enrichment.  Alternatively, the Court should stay the case until January 1, 2016.


Dated:   June 10, 2014                              Respectfully submitted,


                                                   By: /s/ Patrick S. Thompson
                                                       Forrest A. Hainline III
                                                       *fhainline@goodwinprocter.com*
                                                       Patrick S. Thompson (SBN 160804)
                                                       *pthompson@goodwinprocter.com*
                                                       Robert B. Bader (SBN 233165)
                                                       *rbader@goodwinprocter.com*
                                                       **GOODWIN PROCTER** LLP
                                                       Three Embarcadero Center, 24th Floor
                                                       San Francisco, California 94111
                                                       Tel.:  415.733.6000
                                                       Fax.:  415.677.9041

                                                       *Attorneys for Defendant*
                                                       *BUMBLE BEE FOODS, LLC*

## **PROOF OF SERVICE**

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 10, 2014.

/s/ Patrick S. Thompson
Patrick S. Thompson

NOTICE OF MOTION AND MOTION TO DISMISS, OR STAY                Case No. 5:14-cv-02546-EJD